**PROVIDENCE HOSPITAL, et al., Plaintiffs,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

**No. C93–64R.**

United States District Court, W.D. Washington.

Dec. 3, 1993.

---

1. This ruling is limited to the application of 15 U.S.C. § 1691e(f) to 15 U.S.C. 1691(d)(2) and (3).

Robert Mazer, Oper Kaler Grimes & Shriver, Baltimore, MD, Stephen Smith, Lane, Powell, Spears, Lubersky, Seattle, WA, for plaintiffs.

Evelyn McChesney, Office of General Counsel, Dept. of Health and Human Services, Charles Pinnell, U.S. Attys. Office, Seattle, WA, for defendant.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on cross motions for summary judgment. Having reviewed the motions together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

## I. BACKGROUND

Plaintiffs, "the providers", are hospitals and other Medicare providers owned and managed by three Sisters of Providence non-profit corporations[1] operating hospitals located in Alaska, Washington, Oregon, and California. Defendant is Donna Shalala, the Secretary of Health and Human Services, ("the Secretary"), the agency responsible for reimbursement to Medicare providers. Plaintiffs bring this action contesting the Medicare reimbursement determinations of the Secretary with respect to interest costs of the providers for the 1986 cost reporting period.

### A. The Medicare System

Medicare providers are reimbursed the portion of their costs associated with services rendered to Medicare recipients. 42 U.S.C. § 1395 *et seq.* The Health Care Financing Administration (HCFA), an agency within the Department of Health and Human Services, administers the Medicare program. Payment to Medicare providers is carried out through fiscal intermediaries ("the intermediaries"), such as Blue Cross and Blue Shield Association, who act on behalf of HCFA. 42 C.F.R. § 421.5(b). Providers who disagree with the reimbursement decisions made by the fiscal intermediaries may appeal to the Provider Reimbursement Review Board ("PRRB") if the amount in controversy exceeds the statutory minimum. The fiscal intermediaries represent HCFA before the PRRB. The Board's decision is the final decision of the Secretary unless the Adminis-

---

[1] The three corporations are as follows: Sisters of Providence of Washington, operating in Washington and Alaska; Sisters of Providence of Oregon; and Sisters of Providence of California.

trator of HCFA reverses, modifies or affirms the Board's decision. 42 U.S.C. § 1395.

The providers in this case appealed to the PRRB the reimbursement determinations by several intermediaries with respect to interest expenses for capital-related assets for the 1986 reporting period. The PRRB issued a decision in favor of the Providers, ruling that the providers were entitled to additional reimbursement. The Administrator reversed the PRRB. The providers now appeal the Administrator's decision.

### B. Borrowing by the Providers

Prior to the period in issue, each state corporation borrowed independently using taxable debt issuances. However, anticipating large capital expenditures, the three corporations developed a plan to use tax-exempt debt by borrowing as a group under a master trust indenture agreement, pledging the general credit of the group as a whole. As the Administrator noted in his decision:

> [t]he combined size and financial strength of the obligated group allowed it to obtain a large amount of variable rate debt at a lower interest rate than the providers would have obtained individually. The group was also able to receive an improved rating and lower interest rates on fixed rate bond issues. *id.*

Because proceeds from the various state bond authorities could not cross state lines, the total amount required by the group as a whole ($309,570,580) could not all be borrowed from the same state bond authority. Instead, bonds were issued in each state where the hospitals were located (Washington, Oregon, California, and Alaska). The three corporations together borrowed as an "obligated group" under four fixed rate bonds (one issuance in each of the four states) and one variable rate bond (issued by the Washington bond authority). Each state corporation signed a series of cross-guarantees, pledging the total assets of the group as a whole.

By borrowing as a group, the providers were able to obtain lower interest rates than they would have obtained individually. The overall plan included borrowing 70 percent of the total amount at a fixed rate and 30

percent of the total at a variable rate. Variable rate debt is a riskier type of debt. All of the variable rate debt was issued by the Washington bond authority alone because this type of debt is costly to issue and the providers found it more economical to use a single bond authority.

### C. Interest Paid by the Providers

Each provider initially paid the principal and interest for the debt issuances from its state bond authority at the applicable rate. However, the providers as a group agreed to share the benefits of the lower rate obtained through the variable rate bond issuance in Washington. The central management office of the providers accounted for the interest costs of the various individual providers by using a "blended rate" which combined or averaged the various rates. This blended rate was 7.8 percent. Each individual provider then made payments to or received payments from the other providers such that each provider's payments were equal to the blended rate rather than the rate of the specific bond(s) issued in its state.

### D. Reimbursement by Medicare

The portion of each provider's "necessary and proper" interest on capital indebtedness attributable to Medicare patient utilization is reimbursable under Medicare. *See* 42 C.F.R. § 413.153. Each provider has a different Medicare utilization rate, and thus each provider is reimbursed by Medicare for a different percentage of its interest costs. For example, Alaska has only a 14 percent Medicare utilization rate while the Washington providers have a Medicare utilization rate of between 45 and 49 percent. Thus, in Alaska, Medicare will only reimburse 14 percent of the providers' interest costs while in Washington 45 to 49 percent of the providers' interest costs will be reimbursed.

In their Medicare cost reports the individual providers claimed interest costs based on the overall blended interest rate, not the specific rate of the bond issued in the corresponding state. Thus, each of the providers claimed interest costs at the rate of 7.8 percent. Some intermediaries accepted the

blended rate and others rejected it. Where the blended rate was rejected, the intermediaries reimbursed each provider at the interest rate of the bond issuance from which it actually received loan proceeds. The parties have now agreed that each provider should be reimbursed using the same methodology, either based on the blended rate or on the rate of each state-specific bond issuance. In this action the providers assert that they are entitled to be reimbursed by Medicare based on the blended rate of interest, because each hospital has actually paid interest costs based on the blended rate as a result of the cross-hospital payments administered through the providers' central office. The Secretary, through the decision of the Administrator, argues that each provider is entitled to interest cost reimbursement at the rate of the specific loan proceeds it received from its state bond issuance, not at the blended rate.

## II. DISCUSSION

The issue in this case turns on the interpretation of the Medicare reimbursement statutes, 42 U.S.C. § 1395 *et seq.*, and regulations enacted pursuant thereto. This court must determine whether the Secretary acted properly within her discretion in interpreting the Medicare statutes and regulations to disallow reimbursement of the interest costs claimed by the providers on the basis of the blended rate of interest, allowing them instead based on the rate of each separate bond issuance.

### A. Standard of Review

■ By statute, review of the Secretary's reimbursement decision is governed by the Administrative Procedure Act. 42 U.S.C. § 1395oo(f)(1). Thus, the decision of the Secretary will be reversed only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". 5 U.S.C. § 706(2)(A).

The Ninth Circuit, in the Medicare reimbursement context, has said that "[j]udicial deference to an agency determination is particularly important where, as here, Congress has vested broad discretion in an agency to interpret a statute ... and the implementing regulations are highly complex". *National*

*Medical Enterprises, Inc. v. Sullivan,* ("*NME II*"), 916 F.2d 542, 546 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2014, 114 L.Ed.2d 100 (1991) (citation omitted). Additionally, "[d]eference is accorded the Secretary's interpretation of [her] own regulations where [s]he has expertise in the substantive area involved and where the regulations were promulgated pursuant to congressional authorization." *St. Elizabeth Community Hospital v. Heckler,* 745 F.2d 587, 592 (9th Cir.1984). Thus, the standard of review is deferential with respect to the Secretary's determination, as represented by the Administrator's decision. As the Court of Appeals for the Eighth Circuit has said:

An administrative agency's interpretation of its own regulation merits considerable respect by a reviewing court, and will be controlling absent a showing "that it is plainly erroneous or inconsistent with the regulation." Such deference is especially applicable to areas like Medicare reimbursements that require judgments about appropriate cost accounting practices. *Abbott–Northwestern Hosp., Inc. v. Schweiker,* 698 F.2d 336, 340 (8th Cir.1983) (citations omitted).

### B. Interest Expense Regulation

■ Pursuant to the Medicare statutes in effect during the relevant time period, the providers were entitled to be reimbursed for the "reasonable cost" of their capital-related expenses. 42 U.S.C. § 1395f. "*Reasonable cost*" is defined by 42 U.S.C. § 1395x(v)(1)(A) as "*the cost actually incurred*" (emphasis added). Additionally, pursuant to regulations, interest must be "necessary" and "proper" in order to be considered an allowable cost. 42 C.F.R. § 413.153. According to the regulations, to be "*necessary*", it is required that interest be "*[i]ncurred on a loan made to satisfy a financial need of the provider*". 42 C.F.R. § 413.153(b)(2)(i) (emphasis added).

The Secretary, through the HCFA Administrator, has interpreted the regulation defining interest to exclude use of the blended interest rate for purposes of reimbursement. The Secretary relies specifically on the phrases "incurred on a loan" and "need of

the provider" to support her position that the blended rate is inappropriate for use in calculating the allowable interest.

The parties agree that the providers initially paid interest at the rate of the specific debt issuance for its state and then, pursuant to the Master Trust Indenture, made or received cash payments to or from one another. Thus, each provider first paid interest costs in accordance with the debt instrument issued to it, and then made or received additional payments based on the blended rate. Each state corporation signed the loan documents issued by its state bond authority, and also signed the Series 1985 Master Note which guaranteed the loan agreements made by each state corporation. The interest payments made by each provider in satisfaction of the loan agreement signed individually were payments "incurred on a loan" while the cross-hospital payments made among the providers, pursuant to the Master Trust Indenture, were not. There was no loan agreement requiring the cross-hospital payments and no lender required them to be made. The cross-payments were not "[i]ncurred ... to satisfy a financial need of the provider" 42 C.F.R. § 413.153(b)(2)(i), but rather were intended to satisfy the financial needs of another provider. The guarantees may be valid among the providers but that does not ensure their reimbursability pursuant to the Medicare statute and regulations.

The Secretary's interpretation of the regulations concerning interest costs is entitled to deference, and on the evidence presented it is not arbitrary, capricious or an abuse of discretion. The Secretary acted within her discretion in interpreting the statutes and regulations concerning interest costs such as to exclude the use of the blended rate for Medicare reimbursement purposes. *See St. Mary's Hospital Medical Center v. Heckler,* 753 F.2d 1362, 1367 (7th Cir.1985), *cert. denied,* 472 U.S. 1028, 105 S.Ct. 3502, 87 L.Ed.2d 633 (1985) (The Medicare statute gives the Secretary wide latitude in developing methods of determining costs).

## C. Prohibition Against Cost Shifting

The Medicare statute prohibits "cross-subsidization", *Charter Peachford Hosp., Inc. v.*

*Bowen,* 803 F.2d 1541, 1544 (11th Cir.1986), requiring that:

> the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs. 42 U.S.C. § 1395x(v)(1)(A).

The Secretary argues that the blended rate advanced by the providers obscures the allocation of costs among providers because the providers have different Medicare utilization rates and results in cost-shifting between Medicare and non-Medicare patients, a result prohibited by statute.

In *Fairview Community Hospitals Group Appeal,* PRRB Decision No. 87–D43, [1988–2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 36,217, *aff'd, Fairview Hosp. v. Bowen,* Civ. No. 4–87–316, (D.Minn.1988) [1988–2 Transfer Binder] Medicare and Medicaid Guide (CCH), ¶ 37,063, 1988 WL 235563 the District Court held that use of a 'weighted average' interest rate that distributed the interest costs among several related providers was not permissible for Medicare reimbursement purposes.

In *Fairview,* several providers entered into a master trust indenture and issued bonds. The *Fairview* providers used a weighted average in accounting for the interest costs. Three years later, the *Fairview* providers borrowed additional funds and attempted to blend the interest costs of that later borrowing with the earlier debt. In *Fairview,* as in this case, the providers argued that they were able to obtain a lower interest rate by securing the debt with the total assets of the group of providers and that the weighted average interest rate approach properly allocated the interest costs. The Secretary in *Fairview* argued that the weighted interest approach was not permissible because it "'redistributes the interest costs among the providers and, therefore, not only obfuscates the reality of rate specificity imposed on each provider, but also conflicts with' the regulations prohibiting cross-subsidization of non-Medicare patients by Medicare". *Fairview,* ¶ 37,063 at 16,601. The

Secretary also argued that "[b]ecause the Medicare utilization rates of the hospitals differ, the ... weighted average interest rate blurs the precise identification of Medicare costs and leads to cross-subsidization." *id.* The district court in *Fairview* upheld the Secretary's determination, finding that the Secretary's interpretation of regulations prohibiting cross-subsidization were entitled to deference. *id.,* at p. 16,602, and granted the Secretary's motion for summary judgment on the weighted average interest rate issue.

As did the court in *Fairview,* this court finds that the Secretary's interpretations of the regulations concerning the prohibition on cross-subsidization are entitled to deference. Additionally, the court finds that it is not arbitrary, capricious, an abuse of discrimination or otherwise not in accordance with law for the Secretary to interpret the statutory prohibition on cost-shifting to prohibit the use of the blended rate for Medicare reimbursement purposes.

### D. Generally Accepted Accounting Principles

 The providers argue that Generally Accepted Accounting Principles ("GAAP") require the reimbursement of interest at the blended rate for each provider. Providers argue that the Secretary is bound by GAAP where issues of accounting are concerned, as opposed to substantive Medicare questions, citing *National Medical Enterprises v. Bowen,* 851 F.2d 291 (9th Cir.1988), ("*NME I*"), as well as the Secretary's arguments to the court and the decision in *NME II,* 916 F.2d 542 (9th Cir.1990), and that this case presents such an accounting question. They further contend that GAAP compels reimbursement at the blended rate, rather than the rate paid by each provider.

The providers urge the court to reconcile *NME I* and *NME II* and require the Secretary to follow GAAP in determining the rate at which the interest costs should be reimbursed. The court finds this unnecessary in light of its finding that this dispute involves a "substantive" Medicare issue, rather than a pure accounting issue. Whether the cross-payments among providers are reimbursable as "reasonable costs" which were "actually incurred" and whether such costs were "necessary" or "incurred on a loan made to satisfy a need of the provider" is a substantive Medicare determination, not solely an accounting issue. Thus, even if providers are correct in their analysis of *NME I* and *NME II,* the court would nonetheless conclude that the Secretary is not required to follow GAAP in determining whether to reimburse the providers at the blended rate.

### III. CONCLUSION

On the evidence presented, the Secretary's interpretations of the Medicare statutes and regulations are not arbitrary, capricious or an abuse of discretion and shall therefore be upheld. Defendant's motion for summary judgment is GRANTED and plaintiffs' motion for summary judgment is DENIED.